[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO REARGUE
The defendant has moved to reargue the order of the court granting the plaintiff's motion to strike her revised counterclaim. The basis of the motion is that the court did not consider the defendant's three page memorandum in opposition to the motion, on which counsel had "spent numerous hours preparing. . . ."
This is a collection action by Wightwood School against the defendant for "tuition services" provided to her daughter. The defendant filed a counterclaim which, as revised, alleged fraud, negligence and a CUTPA violation. On February 5, 1999, the plaintiff filed a motion to strike the counterclaim. The motion was scheduled for a hearing on the court's March 22, 1999 short calendar. On that date the plaintiff appeared for the hearing. The defendant neither appeared nor filed a memorandum in opposition to the motion. The motion was granted that day. Two days later, the defendant filed a memorandum in opposition to the motion to strike.
The defendant's untimely memorandum in opposition to the plaintiff's motion to strike does not challenge the granting of the motion insofar as it struck the negligence count. However, her brief does challenge the court's order striking the fraud and CUTPA counts.
In support of the fraud counts the defendant cites Gold v.University of Bridgeport School of Law, 19 Conn. App. 379,562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). Gold
did not hold that a claim for "educational fraud" may be brought CT Page 4574 against an educational institution, as the defendant claims. The viability of such a claim was not challenged by the defendant inGold and was, therefore, assumed by the court. "It is the general rule that a case resolves only those issues explicitly decided in the case." State v. Ouellette, 190 Conn. 84, 91, 459 A.2d 1005
(1983).
The entire subject of educational malpractice and breach of contract was addressed by the Supreme Court in Gupta v. NewBritain General Hospital, 239 Conn. 574 (1996). In Gupta, the Supreme Court observed that "courts have almost universally held that claims of `educational malpractice' are not cognizable." (Footnote omitted.) Id., 591. The court further observed that "educational malpractice cases" were actions in which "a plaintiff sues his or her academic institution for tortiously
failing to provide adequate services . . . or for tortiously
failing to diagnose educational impediments." (Emphasis in original.) Id., 591 n. 15. Fraud is a species of tort. Delahuntyv. Massachusetts Mutual Life Insurance Co., 236 Conn. 582, 598,674 A.2d 1290 (1996); Kilduff v. Adams, Inc., 219 Conn. 314, 330,593 A.2d 478 (1991); Robert S. Weiss Associates, Inc. v.Wiederlight, 208 Conn. 525, 536, 546 A.2d 216 (1988); Rosenblattv. Berman, 143 Conn. 31, 39, 119 A.2d 118 (1955) ("The complaint alleged a conspiracy to cheat and defraud the plaintiff. It sounded in tort."); Beik v. Thorsen, 169 Conn. 593, 595,363 A.2d 1030 (1975) ("deceit belongs to that class of tort of which pecuniary loss generally constitutes part of the cause of action. In other words, the action of deceit is based on fraud and damage."); Boardman v. Burlingame, 123 Conn. 646, 651, 197 A. 761
(1938) ("the wrong complained of is fraud and deceit. . . . It is a cause of action for a tort. . . ."); Farley-Harvey Co. v.Madden, 105 Conn. 679, 681, 136 A. 586 (1927); Nanos v. Harrison,97 Conn. 529, 534, 117 A. 803 (1922); Lewisohn v. Stoddard,78 Conn. 575, 600, 63 A. 621 (1906); Wilson v. Nichols,72 Conn. 173, 180, 43 A. 1052 (1899); Coleman v. Wolcott, 4 Day 6 (1809); D'Agostino v. D'Addio, 6 Conn. App. 187, 188,504 A.2d 528, cert. denied, 199 Conn. 805, 508 A.2d 32 (1986) ("Where a complaint alleged a conspiracy to cheat and defraud the plaintiff, it sounded in tort."); Strickland v. Vescovi,3 Conn. App. 10, 14, 484 A.2d 460 (1984) ("fraud or other manner of wilful tort"); Wedig v. Brinster, 1 Conn. App. 123, 139 A.2d 783
(1983), cert. denied, 192 Conn. 803, 472 A.2d 1284 (1984).
The claim in Gupta was not one in tort but in contract. Id.,
CT Page 4575 590. However, the court held that "[t]he jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a contract claim based on inadequate educational services." (Emphasis in original.) Id., 591. "There are, however," the court stated, "at least two situations wherein courts will entertain a cause of action for institutional breach of a contract for educational services. The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. See Wickstrom v. North Idaho College,111 Idaho 450, 452, 725 P.2d 155 (1986); Ross v. CreightonUniversity, [957 F.2d 410 (7th Cir. 1992)]. The second would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program. See, e.g., Cencor, Inc. v. Tolman,
[868 P.2d 396 (Colo. 1994) (en banc)]; Paladino v. Adelphi University,89 App. Div. 2d 85, 454 N.Y.S.2d 868 (1982)." (Emphasis added.)Id., 592-93. Guided by these teachings, and the cases from other jurisdictions cited with approval in Gupta, this court turns to the allegations of the fraud count of the defendant's counterclaim.
The first count of the defendant's revised counterclaim alleges in relevant part: "1. the plaintiff held itself out to the defendant to be an institution which could and would educate her child. 2. Said representations were false, malicious and misleading and were designed to induce payment from the defendant, in that the plaintiff deliberately and fraudulently failed to inform the defendant that it was unable to competently
educate the defendant. 3. The services of the plaintiff were either deliberately incompetent or were so negligent andcarelessly administered that they utterly failed to educate [the plaintiff's minor daughter] in that the plaintiff failed to provide a minimal level of education to the defendant." (Emphasis added.)
"An action for intentional tort has been held to be viable upon the ground that those persons entrusted with the duty to educate our young should not be shield from liability for their intentional wrongs. . . . We do not disagree. An action for fraudulent misrepresentation in the educational context bespeaks an abuse of the trust imparted to our educators and should be entertained by the courts. Deception has no place in the educational process. While negligent misrepresentation and judgmental errors ought not be actionable . . . misrepresentations CT Page 4576 coupled with the element of scienter should result in the imposition of liability." (Emphasis in original.) Paladino v.Adelphi University, supra, 89 App. Div. 2d 94, cited with approval in Gupta v. New Britain Hospital, supra, 239 Conn. 593. However, for the exceptions to the rule of non-liability observed in Gupta
to apply, the trier of fact must be relieved of any obligation to determine whether the educational institutions services weredeficient. Ross v. Creighton University, supra, 959 F.2d 417, cited with approval in Gupta v. New Britain Hospital, supra,239 Conn. 592-93; Paladino v. Adelphi University, supra. The issue must devolve into the question of whether the institution breached a specific promise or whether it failed to provide any real educational services. Ross v. Creighton University, supra;Wickstrom v. North Idaho College, supra, 725 P.2d 157-58, cited with approval in Gupta v. New Britain Hospital, supra,239 Conn. 592.
Viewing the first count of the defendant's counterclaim as a whole, the question becomes a close one. That a private elementary school held itself out as an institution that could educate a child but was unable to do so may state a claim within the exception articulated in Gupta where "the educational program failed in some fundamental respect. . . ." Gupta v. New BritainHospital, supra, 239 Conn. 592. However, this court holds that the first count of the revised counterclaim, as framed, does not satisfy either exception to the general rule of non-liability for "educational malpractice." That count does not allege the breach of a clear promise. Moreover, "competent," "negligent and careless," and even "incompetent" are relative terms; see, e.g.,Gargilo v. Moore, 156 Conn. 359, 362-63, 242 A.2d 716 (1968);Hayes v. Candee, 75 Conn. 131, 136, 52 A. 826 (1902); that do not connote the wholesale "fail[ure] in some fundamental respect" envisioned by Gupta.
The third count of the revised counterclaim incorporates by reference the allegations of the two prior counts, sounding in fraud and negligence, respectively. A CUTPA claim cannot be grounded solely in negligence. Williams Ford, Inc. v. HartfordCourant Co., 232 Conn. 559, 657 A.2d 212 (1995); A-G Foods, Inc.v. Pepperidge Farm, Inc., 216 Conn. 200, 579 A.2d 69 (1990); and "professional negligence — that is, malpractice — does not fall under CUTPA." Beverly Hills Concepts, Inc., v. Schatz and Schatz,247 Conn. 48, 79, 717 A.2d 724 (1998). On the other hand, "a CUTPA violation need not involve fraud on the part of the violator." Lester v. Resort Camplands International, Inc.,
CT Page 457727 Conn. App. 59, 71, 605 A.2d 550 (1992). However, a CUTPA claim is a statutory tort action; Lees v. Middlesex Ins. Co.,219 Conn. 644, 649, 594 A.2d 952 (1991); and the same policy considerations discussed in Gupta that militate against tort liability for educational malpractice generally militate against a CUTPA claim grounded in educational malpractice.
The motion to reargue is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court